UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
SCOTT YOUNG,

                Plaintiff,

                                                                              **DECISION AND ORDER**
v.                                                               13-CV-4551 (WFK)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
---------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

Plaintiff Scott Young ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), alleging Carolyn W. Colvin, the Commissioner of Social Security ("Commissioner"), improperly denied Plaintiff's request for Supplemental Security Income ("SSI") benefits. The Commissioner filed a motion for judgment on the pleadings requesting an order affirming the Commissioner's decision and dismissing the action. Plaintiff filed a cross motion for judgment on the pleadings requesting an order reversing the Commissioner's decision and remanding the action for a calculation and award of benefits, or in the alternative, an order remanding the action for a new hearing and decision consistent with this Court's opinion. For the reasons that follow, Plaintiff's motion is DENIED and the Commissioner's motion is GRANTED.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born in Brooklyn, New York in January 1966. *See* Dkt. 21 (Administrative Record) ("R."), at 23, 146. Plaintiff completed two years of college, but did not receive a degree. *Id.* at 34. Plaintiff was incarcerated for twenty-two years in Texas for murder in the first degree. *Id.* at 15, 35, 37, 55. He was released in June 2010. *Id.* at 34-37. While incarcerated, Plaintiff engaged in field work, sewing, and office work such as inventorying as part of his job assignments. *Id.* at 37-42.

On July 9, 2010, Plaintiff filed an application for SSI under the Social Security Act (the "Act")alleging disability beginning on June 1, 1990. *Id.* at 11. Plaintiff's application was denied on January 4, 2011, and Plaintiff requested a hearing before an Administrative Law Judge

—1—

("ALJ") on March 5, 2011. *Id.* An administrative hearing was held before ALJ Valorie Stefanelli ("the ALJ") on September 22, 2011. *Id.* at 10-11, 30-61. In a decision issued on October 27, 2011, the ALJ found Plaintiff was not disabled. *Id.* at 11-18. The Appeals Council denied Plaintiff's request for review on June 12, 2013. Id. at 1-3. This denial became the Commissioner's final act.

## DISCUSSION

### I. Standard of Review

When a claimant challenges the Social Security Administration's ("SSA") denial of disability benefits, the Court's function is not to evaluate *de novo* whether the claimant is disabled, but rather to determine only "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *amended on reh'g*, 416 F.3d 101 (2d Cir. 2005); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (citing *Consol. Edison Co. of N.Y., Inc. v. NLRB*, 305 U.S. 197, 229 (1938)); *Moran*, 569 F.3d at 112. The substantial evidence test "applies not only to the Commissioner's [factual findings], but also to the inferences and conclusions of law to be drawn from [those] facts." *See Carballo ex rel. Cortes v. Apfel*, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999) (Sweet, J.). In determining whether the record contains substantial evidence to support a denial of benefits, the reviewing court must examine the entire record, weighing the evidence on both sides to ensure that the claim "has been fairly evaluated." *See Brown v. Apfel*,

174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks omitted) (citing *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983)).

It is the function of the SSA, not the federal district court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citing *Richardson*, 402 U.S. at 399); *see also Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) ("[I]t is up to the agency, and not this court, to weigh the conflicting evidence in the record.") (internal citation omitted). Although the ALJ need not resolve every conflict in the record, "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Calzada v. Asture*, 753 F. Supp. 2d 250, 268-269 (S.D.N.Y. 2010) (Sullivan, J.) (internal quotation marks omitted, brackets in original) (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).

To fulfill this burden, the ALJ must "adequately explain [her] reasoning in making the findings on which [her] ultimate decision rests" and must "address all pertinent evidence." *Kane v. Astrue*, 942 F. Supp. 2d 301, 305 (E.D.N.Y. 2013) (Kuntz, J.) (internal quotation marks omitted) (citing *Calzada*, 753 F. Supp. 2d at 269). "An ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." *Id.* (internal quotation marks and citations omitted). Remand is warranted when "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999).

## II. Determination of Disability

### A. Applicable Law

To be eligible for SSI benefits, an individual must be aged, blind, or disabled as defined in 42 U.S.C. § 1382c and, *inter alia*, must meet the resource and income limits specified in the Act.

For purposes of SSI, disability is defined as the "[inability] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairments in question must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner must apply the five-step sequential process set forth in 20 C.F.R. § 416.920. *See, e.g., Rosa*, 168 F.3d at 77. The claimant bears the burden of proving the first four steps, while the burden shifts to the Commissioner at the fifth step. *Id.* First, the Commissioner must determine whether claimant is engaging in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not so engaged, the second step is to determine whether the claimant has a "severe medically determinable physical or mental impairment that meets the duration requirement." 20 C.F.R. § 416.920(a)(4)(ii). If the claimant has such an impairment or combination of impairments that are severe and meet the duration requirement, the third step is to determine whether the impairment or combination of impairments meets or equals one of the listings in Appendix 1 of the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's impairment does not match any of

the listings, the fourth step is to determine whether the claimant's residual functional capacity ("RFC") allows the claimant to perform past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the final step is to determine whether the claimant can perform another job based on his or her RFC, work experience, age, and education. 20 C.F.R. § 416.920(a)(4)(v).

### B. The ALJ's Decision

On October 27, 2011, the ALJ followed the five-step procedure to evaluate Plaintiff's claim and found that: (1) Plaintiff had not engaged in substantial gainful activity since July 9, 2010, the application date[1]; (2) Plaintiff had severe impairments of "left foot pain, status post bullet fragment removal, and right carpal tunnel syndrome"; (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a)[2] "except that he can use his right hand for handling and fingering on an occasional basis only, and he needs a sit/stand option[]"; (5) considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. R. at 13-17. As a result, the ALJ found that Plaintiff was not under a disability, as defined by the Act, since July 9, 2010. *Id.* at 17.

---

[1] While Plaintiff claimed disability beginning June 1, 1990, SSI is not payable prior to the month following the month in which the application was filed. See 20 C.F.R. § 416.335.

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

In determining that Plaintiff had the RFC to perform sedentary work, the ALJ considered Plaintiff's testimony, as well as the medical opinions of Dr. Roman Sapozhnikov, M.D., Plaintiff's treating physician, Dr. David Mahony, Ph.D, an independent consultative examiner, Dr. Robert Dickerson, M.D., an independent medical consultant, and Dr. Myron Seidman, M.D. *Id.* at 14-16. The ALJ ultimately found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC assessment. *Id.* at 15. The ALJ also granted "little weight" to Dr. Sapozhnikov's testimony because his reports were contradictory, "he did not submit any test results or treating notes to support his diagnosis" that Plaintiff suffered from bilateral carpal tunnel syndrome, and Petitioner reported suffering only from carpal tunnel syndrome in his right hand. *Id.* at 14, 16.

The ALJ also relied on the testimony of the vocational expert ("VE"), Christina Boardman, to find numerous jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and residual capacity. *Id.* at 17, 55-61. Based on Ms. Boardman's testimony, the ALJ concluded Plaintiff was not disabled because Plaintiff could be a "charge account clerk," an "inspector," or a "call out operator." *Id.* at 17. As a result, the ALJ ultimately concluded Plaintiff "has not been under a disability, as defined in the Social Security Act, since July 9, 2010, the date the application was filed." *Id.* (internal citation omitted).

### III. The ALJ's Alleged Errors

Plaintiff argues that the ALJ erred in the following ways: (1) the ALJ improperly rejected Dr. Sapozhnikov's diagnosis of bilateral carpal tunnel syndrome in the left hand as the treating physician, and (2) the ALJ incorrectly relied on the VE's testimony because it conflicted with the

Dictionary of Occupational Titles ("DOT") and the companion job database, Selected Characteristics of Occupations ("SCO"). Dkt. 18 (Plaintiff's Cross-Motion for Judgment on the Pleadings) ("P's Motion") at 17-24. Plaintiff requests that the Commissioner's decision be reversed and remanded for a calculation and award of benefits, or in the alternative, the decision be remanded for a new hearing and decision consistent with this Court's opinion. *Id.* at 25. The Commissioner requests her decision be affirmed because there is substantial evidence in the record to support the conclusion that Plaintiff has the RFC to engage in sedentary work. Dkt. 16 ("Def. Mot.") at 16-25. The Court considers each argument in turn.

### A. **The ALJ Did Not Fail to Follow the Treating Physician Rule**

The Court first turns to Plaintiff's argument that the ALJ failed to follow the treating physician rule. For the reasons set forth below, the Court disagrees.

In evaluating the available medical evidence as part of an application for disability benefits, "[t]he law gives special evidentiary weight to the opinion of the treating physician[s]." *Clark*, 143 F.3d at 118. Specifically, the regulations provide that:

> Generally, [the SSA] give[s] more weight to opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 416.927(c)(2). For these reasons, the opinion of a treating physician will be given controlling weight on the issue of the nature and severity of a claimant's impairments, if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* If an ALJ decides not to give a treating physician's opinion controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and/or is

—7—

inconsistent with the other substantial evidence in the case record, then the ALJ must assess six factors in order to determine how much weight to afford the treating medical opinion and other medical opinions: 1) whether the physician examined the claimant; 2) the nature and extent of the treatment relationship, including the length of the relationship and the frequency of examination; 3) the evidence in support of each opinion, such as medical signs, laboratory findings, and more complete explanations; 4) the extent to which the opinion is consistent with the record as a whole; 5) whether the medical provider is a specialist; and 6) any other relevant factors. 20 C.F.R. § 416.927(c). Remand may be appropriate where the ALJ fails to explicitly consider these six factors. *See, e.g., Balodis v. Leavitt*, 704 F. Supp. 2d 255, 265-68 (E.D.N.Y. 2010) (Bianco, J.) (finding remand appropriate where ALJ did not explicitly consider several factors when rejecting doctor's opinion). In fact, the Second Circuit has instructed that remand is appropriate "when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion," or when "opinions from ALJ[]s [] do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *See Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

Here, Plaintiff has one treating physician: Dr. Sapozhnikov. The ALJ gave little weight to Dr. Sapozhnikov's opinion that Plaintiff suffered from bilateral carpal tunnel syndrome because the ALJ found Dr. Sapozhnikov's reports to be contradictory, not supported by the treatment record, and inconsistent with Plaintiff's testimony. R. at 14, 16. In deciding to give little weight to Dr. Sapozhnikov's diagnosis, the ALJ explained:

> "On April 21, 2011, [Plaintiff]'s treating physician, Dr. Roman Sapozhnikov, diagnosed moderate right carpal tunnel syndrome based on the [Electromyography]. However, on July 12 and August 29, 2011, Dr. Sapozhnikov diagnosed bilateral carpal tunnel syndrome. He did not submit any test results or treating notes to support his diagnosis. Moreover, his later diagnosis is contradicted by [Plaintiff's] testimony that he has only right carpal

—8—

tunnel syndrome. Accordingly, I give little weight to Dr. Sapozhnikov's finding of bilateral carpal tunnel syndrome."

...

"I gave little weight Dr. Sapozhnikov's diagnosis of bilateral carpal tunnel syndrome. . . . I give little weight to Dr. Sapozhnikov's residual functional capacity assessments. These assessments are not supported by any treatment records or by [Plaintiff's] testimony. Moreover, they contradict each other. For example, on July 12, 2011, Dr. Sapozhnikov opined that [Plaintiff] can (1) sit for 1-2 hours in an 8-hour work day, (2) continuously sit for 30 minutes, (3) stand for a total of 1 hour in an 8-hour work day, (4) continuously stand for 10-15 minutes, (5) walk for 1-2 hours in an 8-hour work day, (6) continuously walk for 30 minutes, and (7) occasionally lift and carry 5 pounds. On August 29, 2011, Dr. Sapozhnikov opined that [Plaintiff] can (1) sit for 1-2 hours in an 8-hour work day, (2) continuously sit for 30-60 minutes, (3) stand for a total of 1 hour in an 8-hour work day, (4) continuously stand for 30-60 minutes, (5) walk for 1-2 hours in an 8-hour work day, (6) continuously walk for 1 hour, and (7) occasionally lift and carry up to 10 pounds."

*Id.* at 14, 16 (internal citations omitted).

Plaintiff argues it was improper for the ALJ to reject Dr. Sapozhnikov's diagnosis of bilateral carpal tunnel syndrome because his two reports are not contradictory, and his opinion is not contradicted by anything in the record. P's Motion at 20-21. Specifically, Plaintiff claims "the ALJ erroneously discounted Dr. Sapozhnikov's reports, failed to give 'good reasons' for [the ALJ's] rationale, and misinterpreted, or otherwise ignored, the remaining medical evidence supporting a determination that [Plaintiff] lacked the ability to perform the demands of sedentary work." *Id.* at 22. Ultimately, Plaintiff argues that because the ALJ gave little weight to Dr. Sapozhnikov's diagnosis of bilateral carpal tunnel syndrome, it also failed to "confront the unquestionable fact that there clearly is carpal tunnel syndrome in the dominant right hand." *Id.* at 19.

Based on the record, the Court finds the ALJ properly granted little weight to Dr. Sapozhnikov's diagnosis of bilateral carpal tunnel syndrome for several reasons. First, Dr.

Sapozhnikov's diagnosis is not supported by any evidence in the record. *See* 20 C.F.R. § 416.927(c)(2). For example, no other doctor opined that Plaintiff suffered from bilateral carpal tunnel syndrome. Furthermore, Plaintiff himself testified that he only suffered from carpal tunnel syndrome in the right hand – not bilateral carpal tunnel syndrome. R. at 44. Moreover, although Plaintiff argues that Dr. Sapozhnikov's reports were not contradictory, that is simply not the case. The two reports are contradictory because they come to different conclusions about Plaintiff's ability to engage in certain physical activities without any medical support, treatment notes, or laboratory results to support any changes in Plaintiff's ability to engage in certain physical activities.

For example, Dr. Sapozhnikov's July 12, 2011 report stated Plaintiff could continuously stand for 10-15 minutes. *Id.* at 366. Yet on August 29, 2011, a little over a month later and without any additional laboratory results or treatment records, Dr. Sapozhnikov concluded that Plaintiff could continuously stand for 30-60 minutes. *Id.* at 375. Similarly, Dr. Sapozhnikov's July 12, 2011 report stated Plaintiff could continuously walk for 30 minutes, but in his August 29, 2011 report, without any new treatment records, he concluded that Plaintiff could continuously walk for one hour. *Compare id.* at 366 *to id.* at 375. Yet again, Dr. Sapozhnikov's July 12, 2011 report stated that Plaintiff could occasionally lift and carry 5 pounds, but in his August 29, 2011 report, without any new or additional treatment records, he concluded that Plaintiff could occasionally lift and carry up to 10 pounds. *Compare id.* at 366-67 *to id.* at 375-76. Without any medical documentation to support these findings, the ALJ was correct to conclude the reports were contradictory in that they present different information as to Plaintiff's physical capabilities.

Second, Plaintiff improperly seems to suggest that because the ALJ afforded little weight to Dr. Sapozhnikov's diagnosis of bilateral carpal tunnel syndrome, the ALJ must have also failed to "confront the unquestionable fact that there clearly is carpal tunnel syndrome in the dominant right hand." P's Motion at 19. The ALJ made clear in her decision that she only gave little weight to Dr. Sapozhnikov's diagnosis of *bilateral* carpal tunnel syndrome – nothing else. R. at 14. Moreover, there is nothing in the record to suggest the ALJ gave little weight to Dr. Sapozhnikov's opinions regarding carpal tunnel syndrome in Plaintiff's right hand, especially given the ALJ's finding that Plaintiff suffered from the severe impairment of right carpal tunnel syndrome in her decision. *Id.* at 13. In fact, even Plaintiff concedes the ALJ only granted little weight to Dr. Sapozhnikov's diagnosis of bilateral carpal tunnel syndrome. P's Motion at 19. As such, it is inappropriate for Plaintiff to attempt to piggyback the argument that the ALJ failed to consider carpal tunnel syndrome in the dominant right hand based on the ALJ's decision to grant little weight to Dr. Sapozhnikov's diagnosis of bilateral carpal tunnel syndrome. It is also factually incorrect. *See* R. at 13.

Accordingly and based on the foregoing, Plaintiff's motion for judgment on the pleadings on this issue must be DENIED.

### B. The VE's Testimony was Reliable

Next, we turn to Plaintiff's argument that the ALJ erroneously relied on the VE's testimony in concluding Plaintiff has the capacity to perform other work which exists in significant numbers in the national economy. Specifically, Plaintiff claims that he cannot perform two of the jobs identified by the VE – charge account clerk and dowel inspector – because these jobs require frequent handling. P's Motion at 22-24. According to Plaintiff, because only one remaining job exists that was identified by the VE – call-out operator – the

Court "should not assume that the remaining job[] [is] sufficient in number to support the Commissioner's step five burden." *Id.* at 24 (citations omitted). Plaintiff's argument is misplaced. As courts in this circuit have noted, "[a]lthough the vocational expert identified only a single job, the Social Security Act affords benefits only to those who cannot engage in *any* other kind of substantial gainful work which exists in the national economy." *Bull v. Comm'r of Soc. Sec.*, 05-CV-1232, 2009 WL 799966, at *6 (N.D.N.Y. Mar. 25, 2009) (Kahn, J.) (citations, quotation marks, and brackets omitted). Moreover, "[e]ven if the VE had identified only one job that existed in sufficient numbers, the Commissioner would have met his burden at the fifth step." *Sullivan v. Astrue*, 08-CV-6355, 2009 WL 1347035, at *15 n.15 (W.D.N.Y. May 13, 2009) (Siragusa, J.) (citations omitted).

Here, even assuming that Plaintiff could not perform the jobs of charge account clerk and dowel inspector, the VE has identified a job that exists in significant numbers in the national economy – call-out operator. R. at 58. According to the VE, there are 2,190 jobs for call-out operator in the region and 53,770 in the nation. *Id.* These numbers are sufficient to establish a "significant" number pursuant to 20 C.F.R. § 416.920. *See, e.g., Dumas v. Schweiker*, 712 F.2d 1545, 1549, 1554 (2d Cir. 1983) (finding 150 jobs in the region and 112,000 jobs in the national economy constituted a significant number); *Bull*, 2009 WL 799966, at *6 (100,000 national jobs and 125 local jobs constituted a significant number).

Accordingly and based on the foregoing, Plaintiff's motion for judgment on the pleadings on this issue must be DENIED.

## CONCLUSION

For the reasons stated herein, Plaintiff's cross motion for judgment on the pleadings, Dkt. 17, is DENIED, and the Commissioner's motion for judgment on the pleadings, Dkt. 15, is GRANTED. The Clerk of Court is respectfully instructed to close this case.

**SO ORDERED.**

s/William F. Kuntz, II

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 7 2015
Brooklyn, New York